**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **LIBERTY MUTUAL FIRE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 3:08-cv-00308** |
| | ) **Judge Thomas A. Wiseman, Jr.** |
| **BP STAFF, INC., a South Carolina corporation,** | ) |
| **S.B. PHILLIPS COMPANY, INC.,** | ) |
| **a South Carolina corporation,** | ) |
| **SAMUEL BLANTON PHILLIPS, III,** | ) |
| **and SAMUAL B. PHILLIPS, JR.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

Before the Court are three different motions to dismiss: (1) the Motion to Dismiss for Failure to State a Claim Under Rule 12(b), for Improper Venue, or, in the Alternative, to Transfer (Doc. No. 11) filed by defendants BP Staff, Inc. and Samuel Blanton Phillips, III; (2) defendant Samuel B. Phillips, Jr.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 24); and (3) S.B. Phillips Company, Inc.'s and Samuel B. Phillips, Jr.'s Motion to Dismiss Based on Abstention and for Failure to State a Claim for Relief under Rule 12(b)(6) or, in the Alternative, to Transfer Based on Forum Non-Conveniens (Doc. No. 27). Each of the motions has been fully briefed and is ripe for consideration, and the Court will consider each herein.

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

Liberty Mutual Fire Insurance Company ("Liberty Mutual") filed this action for breach of contract against all four defendants on March 26, 2008. This Court has diversity jurisdiction, 28 U.S.C. § 1332.

In its Complaint, Liberty Mutual alleges that it provided workers' compensation insurance coverage to BP Staff, Inc. ("BP Staff") and S.B. Phillips Company, Inc. ("S.B. Phillips Company") from September 2002 through August 2005 and that both BP Staff and S.B. Phillips Company breached their respective contractual obligations to Liberty Mutual by failing to pay insurance premiums owed to Liberty Mutual in the total amount of more than $400,000, in the case of BP Staff, and more than $100,000 in the case of S.B. Phillips Company. (Compl. ¶¶ 37, 47.) Liberty Mutual further alleges that S.B. Phillips Company as well as defendants Samuel Blanton Phillips, III ("Blanton Phillips") and Samuel B. Phillips, Jr.

("Samuel Phillips") were "alter egos of BP Staff." (Compl. ¶ 27.) On that basis, Liberty Mutual seeks to recover the amount owed by BP Staff from all four defendants jointly and severally. (Compl. ¶ 40.)

Liberty Mutual identifies relatively few other facts in support of its contract claims, except it does allege that "BP Staff and SB Phillips entered into a sham arrangement whereby SB Phillips' employees would allegedly become those of BP Staff. BP Staff would then give those employees back to SB Phillips. SB Phillips became the client company of BP Staff under this sham arrangement." (Compl. ¶ 25.) The purpose of this arrangement was allegedly to lower the amount of S.B. Phillips Company's workers' compensation insurance premium obligation by lowering its risk factor, upon which insurance premiums are based in part. (Compl. ¶ 25.) BP Staff allegedly never disclosed to Liberty Mutual its true relationship with S.B. Phillips Company, but Liberty Mutual eventually discovered the relationship and reclassified BP Staff's relationship with S.B. Phillips Company for purposes of policy year 2004–2005 as an "employee leasing arrangement" which required a "multiple coordinated policy". (Compl. ¶ 28.) Liberty Mutual re-billed the 2004 policies issued to both BP Staff and S.B. Phillips Company to reclassify them as "multiple coordinated policies." (Compl. ¶ 30.) Liberty Mutual does not indicate in its Complaint whether or to what extent this rebilling resulted in an increased premium to either BP Staff or S.B. Phillips Company or what other effects this rebilling had on the policies issued to BP Staff or S.B. Phillips Company or these defendants' payment obligations. In its filings in response to the defendants' motions, Liberty Mutual asserts that the reclassification did not result in a net increase in BP Staff's premium, but the issuance of "multiple coordinated policies" apparently did have the effect of making S.B. Phillips Company jointly liable for BP Staff's premium for that year.[1] The Complaint, however, does not otherwise indicate in what way that classification relates to Liberty Mutual's breach-of-contract or damages claims.

## II.     THE ADMINISTRATIVE ACTION

Although the Complaint itself does not reference any administrative action, the defendants' motions to dismiss are premised on the fact that in early 2005, after BP Staff received notice that Liberty Mutual intended to rebill the 2004 insurance policy as a "multiple coordinated policy," BP Staff appealed that determination to the Tennessee Department of Commerce and Insurance ("TDCI") pursuant to Tenn.

---

[1] The Court references that assertion for purposes of clarity since it is not stated in the Complaint or in any affidavits submitted in support of or opposition to the defendants' motions.

Code Ann. § 56-5-309(b). The matter was referred to Assistant Commissioner of Insurance, Larry C. Knight, Jr., and, after the parties conducted discovery, a hearing was held on November 29, 2007.

On April 25, 2008, Assistant Commissioner Knight issued a "Final Order" in the administrative action. In his opinion, Knight noted that the sole question to be determined was "whether it was appropriate for . . . Liberty Mutual to designate the operations of . . . BP Staff as an employee leasing arrangement during the policy period 2004-2005." (Doc. No. 27-2, at 2.) The agency held that Liberty Mutual's action was appropriate and ordered that BP Staff pay Liberty Mutual "any additional premium owed" but without calculating that amount (Doc. No. 27-2, at 6), since damages were not at issue in the administrative action. BP Staff subsequently filed a Petition for Reconsideration or, in the Alternative, to Appeal Order (*see* Doc. No. 27-3), asserting that it had presented sufficient proof at the hearing to show it was not an employee leasing company as that term is defined by Tennessee law, Tenn. Code Ann. § 62-43-103. BP Staff objects to the agency's finding on the basis that the Commissioner inappropriately applied the definitions adopted by the National Council on Compensation Insurance ("NCCI") for "temporary help service" and "employee leasing arrangement" rather than the definitions established by Tennessee statute. Liberty Mutual, on the other hand, contends that BP Staff's objection is without merit because the referenced statute concerns the licensing of businesses rather than the insurance industry.

III.    **THE DEFENDANTS' MOTIONS**

Defendants BP Staff and Blanton Phillips (collectively, the "BP defendants") filed a motion to dismiss on May 2, 2008 (apparently before the defendants received notice of the TDCI's April 25 Final Order and before they filed an appeal of that decision), in which they seek dismissal of this action on the grounds that the facts of this case "meet the narrow principles designated for an exception to the doctrine of abstention" under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Alternatively, they seek dismissal or transfer to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a) for the conveniences of parties and witnesses and in the interest of justice. Although the motion is characterized as one for dismissal for failure to state a claim, the defendants' Memorandum addresses only the issues of abstention and venue. (Doc. No. 12.)

On June 20, 2008, defendants S.B. Phillips Company and Samuel B. Phillips, Jr. (the "S.B. Phillips defendants") filed their own motion to dismiss on abstention grounds or to transfer. The S.B.

Phillips defendants' motion is premised on the pendency of BP Staff's appeal of the TDCI's decision upholding Liberty Mutual's classification of BP Staff as an employee leasing company. In addition to echoing the BP defendants' argument that abstention is appropriate on *Colorado River* grounds, the S.B. Phillips defendants also assert that the Court should apply the *Burford* abstention doctrine, as first articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Alternatively, the S.B. Phillips defendants seek dismissal of the claims against them under Rule 12(b)(6) or transfer pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of South Carolina (Greeneville Division).

Finally, defendant Samuel Phillips, Jr. has filed a separate motion to dismiss for lack of jurisdiction, in which he asserts that he does not have sufficient minimum contacts with the state of Tennessee to subject him to personal jurisdiction in this forum.

The Court will first consider each of these motions separately.

### A.       The Motions to Dismiss on Abstention Grounds

### *(1)       Whether the* Burford *Abstention Doctrine Applies*

Supreme Court precedent has "long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) (citations omitted). Federal courts' duty to exercise jurisdiction over cases properly before them is grounded in "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *Id.* at 359 (citing *Kline v. Burke Construction Co.*, 260 U.S. 226, 234 (1922)).

Notwithstanding that principle, federal courts maintain "discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." *Id.* (citation omitted). The Supreme Court has, however, carefully and narrowly defined the areas in which a decision to decline to grant relief—to "abstain"—is permissible, and it remains " 'the exception, not the rule.' " *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 813). Defendants here assert that abstention is appropriate based upon the principles established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

From *Burford* and its progeny, the Supreme Court has "distilled" what is now known as the *Burford* doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv.*, 491 U.S. at 361 (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 814). *See also Value Behavioral Health v. Ohio Dep't of Mental Health*, 966 F. Supp. 557, 572 (the *Burford* doctrine "applies if a federal court's assertion of jurisdiction would interfere with a state agency, necessitate the resolution of state law issues, and disrupt state efforts to establish a coherent policy as to a matter of public concern"). *Burford*, however, "does not require abstention whenever there exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. at 362 (quotation omitted). Instead, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quotation omitted).

Further, in *Quackenbush*, the Supreme Court confirmed that a district court's power to dismiss an action under *Burford* is limited to cases in which discretionary or equitable relief alone is sought. 517 U.S. at 730. In other words, "*Burford* abstention does not apply to suits seeking damages." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 662 (6th Cir. 2002). Notwithstanding, when monetary damages are sought and other relevant factors support *Burford* abstention, a stay rather than outright dismissal might be appropriate. *Quackenbush*, 517 U.S. at 730-31 ("*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law.").

The S.B. Phillips defendants argue that the Court should exercise *Burford* abstention here because (1) Tennessee has "enacted a comprehensive statutory scheme regulating the insurance industry, which includes a "specialized and coherent process for resolving grievances concerning

worker's compensation coverage and rates" (Doc. No. 28 at 5–6); (2) timely and adequate state court review of administrative decisions is available; and (3) the case involves "difficult questions of state law bearing on policy problems of substantial public import," including the question of which definition of "employee leasing company" applies and how it should be interpreted and applied (Doc. No. 28, at 8–9). Finally, the defendants argue that "federal court review of this matter threatens to disrupt Tennessee's efforts to establish a coherent policy with respect to its regulation of the insurance industry and its establishment of consistent rates therein," and that *Burford* abstention is therefore mandated. (Doc. No. 28, at 10.)

Defendants completely disregard the fact that Liberty Mutual seeks damages rather than equitable relief; under *Quackenbush* it is clear that dismissal under *Burford* is not permissible, regardless of whether the requirements for abstention were otherwise met. Even if Defendants had sought one, a stay would not be appropriate either. While it is beyond dispute that Tennessee has enacted a comprehensive statutory scheme regulating the insurance industry, the case at bar is a contract dispute, and the issue is whether the insurance company defendants have paid the premiums due to Liberty Mutual under their contracts. In addition, Liberty Mutual seeks to pierce the corporate veil and hold the individual defendants and S.B. Phillips Company jointly and severally liable for BP Staff's contractual obligations. On the other hand, the administrative proceeding at issue involves BP Staff only, and concerns only the question of whether Liberty Mutual properly classified BP Staff, for purposes of the 2004-2005 policy, as an employee-leasing company. If that classification is appropriate, it would apparently provide an alternative basis for holding S.B. Phillips Company jointly and severally liable for BP Staff's 2004 insurance premium. The TDCI has held that it is, and the Court presumes that decision is likely to be upheld on review. The contract issues before this Court do not directly overlap with the issues raised in the administrative action, nor will this Court's resolution of the issues raised in Liberty Mutual's Complaint disrupt in any way Tennessee's efforts to regulate the insurance industry generally or, more specifically, its establishment of consistent rates.

In fact, the defendants' emphatic representations to the contrary notwithstanding, the issue of whether BP Staff is appropriately characterized as an employee leasing company for purposes of the 2004-2005 policy is largely tangential or collateral to the breach-of-contract claims before this Court.

Even if that issue becomes relevant, the Court will be bound by whatever decision the state agency and/or state courts will likely already have reached. There is certainly a possibility that a stay at some point might become appropriate if in fact BP Staff pursues an administrative appeal and/or an appeal to the state courts and, at the same time, the issue of how BP Staff should be classified comes to the forefront in this case, but that possibility is purely speculative at this point. Regardless, the defendants have not sought a stay, and dismissal on the grounds of *Burford* is clearly not warranted.

### *(2)* *Whether the* **Colorado River** *Abstention Doctrine Applies*

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976), the Supreme Court articulated another basis for abstention, which allows federal courts, in extraordinary circumstances, to dismiss federal court actions that mirror concurrent state court actions. "A necessary requirement for application of this *Colorado River* doctrine . . . is the presence of a parallel, state proceeding." *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). "[W]here . . . there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist." *Gottfried v. Med. Planning Servs., Inc.*, 142 F.3d 326, 329 (6th Cir. 1998) (citation omitted).

In the present case, there is no ongoing state proceeding. The TDIC has issued its Final Order on the question of whether Liberty Mutual properly classified BP Staff as an employee leasing company, and BP Staff has filed a request for reconsideration and signaled its intent to file an appeal in state court if the result of that request is unfavorable, but at the moment, as far as this Court has been made aware, nothing is pending. *Cf. Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 927 (8th Cir. 2006) ("[T]he mere possibility of [a state court] proceeding does not represent the type of exceptional circumstance sufficient to justify [*Colorado River*] abstention.").

Even if there were an ongoing state proceeding, it could not be deemed "parallel" to the matter before this Court. The administrative action and, thus, the potential state court action involve Liberty Mutual, BP Staff, and the question of whether BP Staff was properly classified as an employee leasing company for the 2004-2005 policy year. The action in this Court matter involves three additional defendants and concerns the question of whether all four defendants may be liable to Liberty Mutual for damages arising from the corporate defendants' alleged failure to pay policy premiums due from 2002

through 2005. *Cf. Crawley*, 744 F.2d at 31 (rejecting application of *Colorado River* doctrine on the grounds that the state court action was not "parallel" to the federal action where it involved different defendants, different claims, and different time frames).

Because there is no ongoing parallel state-court action, the Court has no need to undertake the five-factor analysis called for in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) (listing the factors to be considered and weighed when deciding whether to dismiss a federal claim in deference to a parallel, state-court proceeding). Dismissal under *Colorado River* is not warranted.

**B.     The S.B. Phillips Defendants' Rule 12(b)(6) Motion to Dismiss**

In the alternative, the S.B. Phillips defendants seek partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Specifically, the S.B. Phillips defendants assert that they cannot be liable for BP Staff's alleged failure to pay insurance premiums because they were not parties to the contract, and because they were not owners or shareholders in BP Staff and therefore cannot be held liable on *alter ego* or veil-piercing grounds. With respect to the breach of contract claim against S.B. Phillips Company directly, the defendants assert that they "are unaware of any factual basis for an independent breach of contract claim by [Liberty Mutual] against S.B. Phillips," and that the cause of action against S.B. Phillips Company should therefore be dismissed for failure to state a claim.

The Court can readily dispose of this latter argument. As defendants know, the Court must presume the facts alleged in the Complaint to be true and draw all reasonable factual inferences in favor of the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). The plaintiff in this case, Liberty Mutual, alleges that it provided workers' compensation insurance coverage to S.B. Phillips Company, that it met its obligations under the insurance contracts issued for the period September 2002 through August 2005, and that S.B. Phillips Company, despite having obtained the benefit of insurance coverage provided by liberty Mutual for that time frame, failed to pay the premiums due to Liberty Mutual under the contracts. (Compl. ¶¶ 42–44.) Liberty Mutual has adequately pleaded a claim of breach of contract against S.B. Phillips Company, and the mere fact that S.B. Phillips Company

denies the truth of the factual allegations in the Complaint does not entitle it to dismissal for failure to

state a claim.

With respect to the veil-piercing question, Liberty Mutual alleges in its Complaint that BP Staff

was created in July 2002 by defendant Blanton Phillips "as a device to reduce the workers compensation

costs" of defendant S.B. Phillips Company (Compl. ¶ 4), and that at all times relevant to the Complaint,

Blanton Phillips was the president and sole shareholder of BP Staff (Compl. ¶ 6). It also asserts that

defendant Samuel Phillips is the father of Blanton Phillips and is the sole owner of S.B. Phillips Company.

(Compl. ¶ 7.) Liberty Mutual further alleges as follows:

> 25.    In order to reduce the amount of premium obligation of SB PHILLIPS, BP STAFF was created. BP STAFF and SB PHILLIPS entered into a sham arrangement whereby SB PHILLIPS' employees would allegedly become those of BP STAFF. BP STAFF would then give those employees back to SB PHILLIPS. SB PHILLIPS became the client company of BP STAFF under this sham arrangement.
>
> 26.    BP STAFF was merely a continuance of SB PHILLIPS, to wit: BLANTON PHILLIPS was employed by SB PHILLIPS for eleven years. He was vice president of SB PHILLIPS and reported to his father, SAMUEL PHILLIPS. BLANTON PHILLIPS was paid by SB PHILLIPS until October 2004, as were other BP STAFF employees who remained on SB PHILLIPS' payroll. At BP STAFF's inception, one hundred percent of its payroll was from SB PHILLIPS. BP STAFF and SB PHILLIPS shared employees, shared housing for its [sic] business operations, shared computer systems, and funding for operations. SB PHILLIPS' controller signed BP STAFF's tax filings. BP STAFF used SB PHILLIPS' computer system for its payroll functions, to generate invoices, keep general ledgers, maintain bookkeeping software and personnel files, as well as its internal email system.
>
> 27.    The DEFENDANTS, BLANTON PHILLIPS and SAMUEL PHILLIPS, and SB PHILLIPS were the alter egos of BP STAFF. BP STAFF was created by the DEFENDANTS for use by them to attempt to fraudulently and purposefully lower the modification factor which was to be used to calculate the amount of insurance premium charged for the operations of S.B. PHILLIPS COMPANY, INC. All of the DEFENDANTS operated together and did business as BP STAFF, INC. and S.B. PHILLIPS COMPANY, INC. All of the DEFENDANTS were responsible for the insurance applications, were responsible for responding to requests for information from the insurer and were responsible for funding and managing the operations of BP STAFF and SB PHILLIPS. The DEFENDANTS controlled BP Staff's finances, policy and business practices with respect to obtaining workers' compensation insurance. The individual DEFENDANTS obtained the benefit and profits from operations of the corporate DEFENDANTS.

(Compl. ¶¶ 25–27.)[2]

---

[2]    In addition, Liberty Mutual has presented the affidavit of Paul Holtrup, who is employed by Liberty Mutual as a Senior Forensic Consultant and who personally conducted a workers' compensation premium audit for the insurance policies of BP Staff in October 2004 and October 2005. According to Mr. Holtrup, (1) the personnel files of S.B. Phillips' temporary employees were theoretically transferred from S.B. Phillips Company to BP Staff but continued to be maintained on S.B. Phillips Company's computer system, as BP Staff had no independent computer system for maintaining such files; (2) BP Staff's

In their motion, the S.B. Phillips defendants assert that, based on the allegations in the Complaint, they cannot be held liable for BP Staff's alleged breach of contract on any type of veil-piercing theory because they are not the owners of BP Staff. According to the S.B. Phillips defendants, piercing the corporate veil pursuant to the "alter ego" doctrine is "designed to disregard a sham corporation and impose liability *on the corporate owners*, who are controlling the corporation for their own benefit." (Doc. No. 28, at 16 (quoting *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202–03 (6th Cir. 1992) (emphasis added by defendants)). For the reasons discussed below, the Court finds that the defendants are incorrect, and Liberty Mutual has, at this stage in the proceedings, alleged sufficient facts to pierce the corporate veil to hold them liable for BP Staff's alleged breach of contract.

"Under Tennessee corporation law, a corporation and its shareholders are distinct entities." *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006). By statute, a corporation is empowered "as an individual to do all things necessary or convenient to carry out its business and affairs," such as make contracts, incur liabilities, borrow money, and grant security interests in all or part of its property. Tenn. Code Ann. § 48-13-102 (2002). A corporation, like a person, is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors, but the corporate entity may be disregarded upon the showing of special circumstances, such as that the corporation is a sham or dummy so that failure to disregard it would result in an injustice. *Elec. Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985); *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). "In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock will be treated as identical." *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (citing *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 232 S.W.2d 309 (1950)).

Further, when piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a "related entity," such as a parent corporation, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice. *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866 (Tenn. Ct. App. 2000).

---

employees, including Blanton Phillips, were actually paid by and listed on the payrolls of S.B. Phillips Company; and (3) BP Staff's office space was within S.B. Phillips Company's offices and was demarcated by a piece of paper on the door printed "BP Staff." (Doc. No. 41, at ¶¶ 6–8.)

Virtually all the reported cases in Tennessee that consider a veil-piercing theory of recovery involve situations in which a plaintiff has sought to hold the owner of a company or a formally related corporate entity, such as a parent corporation, liable for corporate debts.  Ample authority from other jurisdictions exists, however, for holding other persons and entities liable for corporate debts when equity so demands:

> It has been argued that the corporate veil may not be pierced to impose liability on one who does not own stock in the corporation; however, this argument appears to have been universally rejected.  *Piercing the corporate veil is an equitable remedy and the courts are more concerned with reality than with form.  If piercing the corporate veil is justified, the doctrine may be used to impose liability on any person who has controlled the corporation or used the corporate form improperly.*

45 Am. Jur. Proof of Facts 3d 1 (2007), at § 18.  Thus, the doctrine may be used to impose liability, not only on parent corporations and corporate officers and directors, but on creditors, *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098 (5th Cir. 1973) (creditor not liable on facts of case), optionees, *Soderberg Advertising, Inc. v. Kent-Moore Corp.*, 524 P.2d 1355, 1357 (Wash. Ct. App. 1974), spouses of stockholders, *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F. Supp. 1355 (S.D.N.Y. 1978) and *Kilpatrick Bros., Inc. v. Poynter*, 473 P.2d 33 (Kan. 1970), and significant others of stockholders, *Five Star Supply Co. v. Rinella*, 623 N.E.2d 1277 (Ohio Ct. App. 1993).  *Cf. Barbee Concrete Const. v. Bachinksi Builders, Inc.*, 1997 WL 723195, at *2 n.1 (Ohio Ct. App. Nov. 20, 1997) (rejecting as "without merit" co-defendant's claim that he could not be held liable under a veil-piercing theory because he held no stock in the defendant); *Jones v. United States*, 1994 WL 722086 (E.D.N.C. April 25, 1994) (citing *Establissement Tomis* in support of its decision to permit the government to file a motion to amend the counterclaim to pierce the corporate veil against a non-shareholder).

As indicated above, Defendants cite *Foster Wheeler Energy Corp. v. Metropolitan Knox Solid Waste Authority* in support of their argument that *alter ego* liability is limited to *owners* of the corporation whose corporate veil a plaintiff seeks to pierce.  In that case, the plaintiff sued Metropolitan Knox Solid Waste Authority as well as the City of Knoxville and Knox County, which had jointly created the Waste Authority.  The city and county did not have an equity ownership interest in the Waste Authority, which was a non-profit corporation financed with revenue bonds.  The plaintiff sought to pierce the corporate veil and recover for the Waste Authority's breach of contract from the city and county on the grounds that they exercised "complete dominion and control" of it such that the Waste Authority was acting merely as the

"alter ego" of the city and county. The trial court had allowed the plaintiff to recover from the city and county despite their lack of ownership interest, stating:

> No Tennessee law can be found that would prevent the corporate veil of a nonprofit corporation to be pierced to reach its members for the same reasons that the veil of a business corporation could be pierced to reach its stockholders, and § 48-56-205(a)[3] recognizes that such a suit can be maintained.

970 F.2d at 202. On appeal, the Sixth Circuit agreed with the district court's "assessment" that there was "no authority which explicitly precludes an application of the corporate veil theory in this setting." *Id.* "On the other hand," the court also noted that Tennessee law did not give the plaintiff "the express right to pierce the corporate veil of a nonprofit corporation in the municipal context," and that "the law's silence on this issue requires us to look to the purposes behind the corporate veil doctrine to determine whether it should be applied in this case." *Id.* In conducting that analysis, the court observed generally that "the theory is designed to disregard a sham corporation and to impose liability on the corporate owners, who are controlling the corporation for their own benefit." *Id.* at 203.

While observing that the city and county were not equity owners in the Waste Authority, the court did not reverse on that basis. Instead, it focused on the fact that the plaintiff did not allege fraud, among other factors:

> Simply because the city and county placed directors on the Waste Authority's board, and agreed to cooperate and use their best efforts to make the Waste Authority succeed, does not, in our view, create a sufficient nexus between the city, the county and the Waste Authority on which to predicate liability. This court is reluctant to extend the corporate veil theory to the present set of facts absent more specific guidance from the Tennessee courts. *Moreover, we understand this theory to apply primarily to prevent fraud or other tortious wrongdoing.* Plaintiffs have made no allegations of fraud in this case. We do not believe this theory should be expanded to relieve creditors of contractual obligations and limitations of which they were fully aware at the time they entered into a contract.

*Id.* at 203 (internal citations omitted; emphasis added).[4]

In the case at bar, Liberty Mutual does allege fraud: It expressly alleges that BP Staff was a "sham" corporation designed and operated by Blanton Phillips, Samuel Phillips and S.B. Phillips Company for the purpose of fraudulently reducing S.B. Phillips Company's workers' compensation costs, to the direct financial benefit of those three defendants. Under the circumstances, the Court finds Liberty

---

[3] Tenn. Code Ann. § 47-56-205 contemplates that a non-profit corporation's creditors may bring suit against a member of the corporation under certain circumstances.

[4] The court also discounted the trial court's reliance on § 47-56-205 on the basis that the city and county were not "members" of the Waste Authority.

Mutual's allegations sufficient to survive a motion to dismiss for failure to state a claim. No Tennessee court has expressly rejected alter ego liability on the grounds of non-ownership. Instead, the Tennessee Supreme Court has made it clear that "[t]he conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case and the matter is particularly within the province of the trial court. M oreover, a determination of whether or not a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of fact for the jury." *Elec. Power Bd. of Chattanooga*, 691 S.W.2d at 526.

The Court will therefore deny the S.B. Phillips defendants' Rule 12(b)(6) motion to dismiss the claims against them.

### C. The Motions to Transfer Venue

Both the BP Staff defendants and the S.B. Phillips defendants contend, in the alternative, that this matter should be transferred to the District Court of South Carolina pursuant to 28 U.S.C. § 1404(a) for the "convenience of the parties and witnesses" and "in the interests of justice." Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In considering the merits of such a transfer, this Court is "required to exercise [its] discretion." *Hoffa v. Gray*, 323 F.2d 178, 179 (6th Cir. 1963). The burden is on the moving party to establish the need for a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The threshold question is whether the proposed transferee court is in a district where this case "might have been brought." 28 U.S.C. § 1404(a). Liberty Mutual does not dispute that this case could have appropriately been brought in the United States District Court for the District of South Carolina, since all the defendants are residents of South Carolina. *See* 28 U.S.C. § 1391(b) (providing that venue may lie in the "judicial district where any defendant resides, if all defendants reside in the same State"). Next, in determining whether to transfer a case pursuant to § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as

well as other public-interest concerns, such as systemic integrity and fairness." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991). The private interests of the parties include:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985) (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). Public interest factors include the enforceability of the judgment; practical considerations affecting trial management; docket congestion; the local interest in deciding local controversies at home; the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

In support of their motions in the present case, Defendants assert that, in addition to the fact that they all reside in South Carolina, the "activities surrounding" the dispute occurred in South Carolina; the defendants signed the forms to contract with Liberty Mutual in South Carolina; correspondence from the defendants to Liberty Mutual originated in South Carolina; and Liberty Mutual's audits of the corporate defendants' books and records took place in South Carolina. (*See* Doc. No. 12.) The S.B. Phillips defendants further point out that Liberty Mutual is a Wisconsin corporation whose principal place of business is in Boston, Massachusetts. (Doc. No. 28.) S.B. Phillips Company has submitted the affidavit of Samuel Phillips in which he states that "all of the witnesses who may testify on behalf of S.B. Phillips concerning its insurance agreements and its relationship with B.P. Staff reside in the state of South Carolina." (Doc. No. 28, at 19–20 (citing S. Phillips Aff., Doc. No. 29, at ¶ 7).) Samuel Phillips, in his individual capacity and on behalf of S.B. Phillips Company, also asserts that he is "unaware of any witness who resides in the state of Tennessee. (S. Phillips Aff. ¶ 8.) Finally, the S.B. Phillips defendants argue that the gravamen or "center of gravity" of the Complaint, "i.e., the nature of B.P. Staff's operations," is in South Carolina. (Doc. No. 28, at 20.)

With respect to the defendants' point regarding witness accessibility, the pertinent standard is as follows:

> The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must

> be on the showing rather than on the numbers. . . .  If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.

*Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993) (quoting 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 at 270–71 (1976)).  In addition, the location of employee witnesses is "entitled to less weight because [defendants] will be able to compel their testimony at trial." *Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925 (E.D. Tex. 1999) (quoting *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)).  Defendants here have not identified any specific potential witnesses located in South Carolina other than to suggest generally that employee witnesses will be called.  In other words, the defendants have not indicated the existence of any important witness whose presence in Tennessee could not be compelled.  Liberty Mutual, in its response, states that its three key witnesses (Paul Holtrup, Neil Johnson and Julie Steinke) are located in Indiana, Massachusetts, and Wisconsin, and that transferring venue to South Carolina would not be more convenient for them.

With respect to party convenience, South Carolina would clearly be more convenient for the defendants, but not necessarily more convenient for Liberty Mutual. The defendants suggest that South Carolina would provide relatively easy access to important sources of proof (including the books and records of the defendants), but Liberty Mutual asserts that other proof is located in Tennessee since the corporate defendants operated in Tennessee and engaged employees in Tennessee.  The Court finds that defendants have generally identified some factors that weigh slightly in favor of transfer but none that are compelling.  Nor have they identified any compelling public-interest factors that support transfer of venue to South Carolina.

The Court finds that, on the whole, while the interests of justice and the convenience of parties and witnesses might slightly favor a change of venue, the balance is not "strongly" in their favor, *Gulf Oil Corp.*, 330 U.S. at 508, so the Court will not disturb the plaintiff's choice of forum.  Defendants' motion to transfer venue will therefore be denied.

### D.       Samuel Phillips' Motion to Dismiss for Lack of Personal Jurisdiction

The Motion to Dismiss filed on behalf of Samuel Phillips is premised on the argument that Mr. Phillips does not have sufficient minimum contacts with the state of Tennessee and has not, as an

individual, purposefully availed himself of the privilege of doing business within this State, so he is not subject to personal jurisdiction in this forum.

The Sixth Circuit has articulated a well-defined protocol for district courts to follow in their disposal of Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271–72 (6th Cir. 1998). First, it is clear that "[t]the plaintiff bears the burden of establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citations omitted). Generally speaking, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (citation omitted).

Once the court is presented with a properly supported 12(b)(2) motion and opposition, it has four procedural alternatives: The district court may determine the motion on the basis of pleadings and affidavits alone; it may permit discovery in aid of the motion; it may conduct an evidentiary hearing on the merits of the motion, or it may reserve its decision until trial. *Dean*, 134 F.3d at 1271–72 (6th Cir. 1998); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). If the court decides not to hold an evidentiary hearing, plaintiffs may defeat the motion by making a *prima facie* showing of jurisdiction in their pleadings and affidavits, which must be considered by the court in a light most favorable to the plaintiffs. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Thus, if the court chooses to rule on the motion without conducting an evidentiary hearing, it "does not weigh the controverting assertions of the party seeking dismissal." *Id.* (quoting *Theunissen*, 935 F.2d at 1459). The Sixth Circuit has determined that "[a]ny other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras*, 875 F.2d at 1214. Thus, "[d]ismissal in this procedural posture is proper only if all the specific facts which the plaintiff [ ] alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe*, 89 F.3d at 1262.

Both parties have submitted affidavits in this case, but they are not necessarily conflicting. The Court finds that an evidentiary hearing is therefore not required and that it may resolve the motion on the basis of the pleadings and the affidavits alone, viewed in the light most favorable to the plaintiff. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) ("When the trial court has

determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." (citation omitted)).

The Sixth Circuit has held that specific jurisdiction over a defendant exists only if the defendant's contact with Tennessee satisfies the three-part test established in *Southern Machine Company v. Mohasco Industries, Inc.*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir.1968)). As the Sixth Circuit later stated, "[t]he 'sine qua non' of personal jurisdiction is the purposeful availment factor." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998).

In this case, the parties have not claimed that the Court lacks jurisdiction over either S.B. Phillips Company or BP Staff, effectively conceding that the corporate defendants purposefully availed themselves of the privilege of acting or causing a consequence within Tennessee, thereby causing the corporate defendants to have a substantial enough connection with Tennessee to render this Court's exercise of jurisdiction over them reasonable. In addition, Liberty Mutual alleges that Samuel Phillips, along with S.B. Phillips Company and Blanton Phillips, were alter egos of BP Staff, that they created BP Staff, a "sham" company for the purpose of fraudulently decreasing the workers' compensation costs of S.B. Phillips Company, to the direct benefit of Samuel Phillips and Blanton Phillips. The Court has already indicated it will deny the defendants' various motions to dismiss the claims based on an alter-ego theory. As this Court has stated on a prior occasion: "[I]if the corporate structure is being used as a vehicle for the conduct of business by an individual who has total control over corporate activities, including the activities giving rise to the suit, then the existence of the corporate form should not immunize him from the jurisdictional contacts of the corporation." *Warren v. Dynamics Health Equip. Mfg. Co.*, 483 F. Supp. 788, 793 (M.D. Tenn. 1980) (finding that the plaintiff's allegations in that case did not provide a legitimate basis for piercing the corporate veil and dismissing claims against individual out-of-

state defendants for lack of personal jurisdiction).  The Sixth Circuit has endorsed the same view, recognizing that

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is the alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Estate of Thomson v. Toyota Motor Corp. Worldwide*, No. 07-3813, 2008 WL 2952784 (6th Cir. July 30, 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

It is clear that, but for Liberty Mutual's allegations in support of piercing the corporate veil, Mr. Phillips would not have sufficient contacts with the state of Tennessee to justify the exercise of jurisdiction over him.  Because the Court will, at this stage in the proceedings, allow those claims to proceed, the motion to dismiss the claims against Samuel Phillips in his individual capacity for lack of personal jurisdiction must likewise be denied.

**IV.    CONCLUSION**

For the reasons set forth herein, the defendants' various motions to dismiss will be denied.  An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge